et al., Council for the Appellant, if you'd make your appearance and proceed. Thank you, Your Honor. My name is Michael, J. Michael Considine, Jr. I represent Christian, in the Workplace Networking Group. I'd like to reserve three minutes for rebuttal. This case is about a federal nuclear agency that has employee resource groups. They're not a federal agency, are they? Yes, they are. They're a private corporation that does business with federal agencies. They're a private corporation, but if you look at the case that I cited, it's not the corporate status that counts. It's the function of the organization. This is a nuclear organization lab that is doing things that no private company does. It's funded by the federal government. It's involved in nuclear proliferation, nuclear weapons, this kind of thing. And if it were a federal agency, then as a matter of law, all of your 1983 claims would go out the window. Because you can't, 1983 claims cannot be brought against a federal agency. Yes, that is true. They can't. They can't. It is true. So are you going to stick with the statement that this is a federal agency? Absolutely. Absolutely. So you're conceding all your 1983 claims? Yes, I am. Conceding they don't, that they are not viable? I'm conceding that they're not a federal actor on that basis, yes. But here, what happened was... I'm going to put a fine point on this. You take the position that this is a federal agency. Yes. 1983 claims cannot be brought against a federal agency. Yes. So you are saying that your 1983 claims, as a matter of law, are in doubt? Yes. I already stated that. Okay. That's fine. But what happened here is, first of all, my client filed a motion for summary judgment, a specific facts statement, and there was never a response to that. So all the facts in this case are undisputed. It's very important, because what happened here was, my client had a statement of faith that was necessary for its leaders to ascribe to, to be leaders, and a disciplinary clause. They were told they could not have that statement of faith. Meanwhile... I'm sorry to interrupt you. What statement of undisputed facts are you referring to that was not responded to? Was it part of the summary judgment briefing that was stricken? No. We filed a second motion for summary judgment. Okay. So it's the second one? Yes, the second one. That was denied as moot? It was denied as moot, but still the facts were undisputed. So the purpose of this case... They didn't have to dispute them if the district court denied it as moot. I'm trying to discern if there's a live motion, a statement of undisputed facts that is operative, that you're referring to, that wasn't either stricken or denied as moot. The motion may be denied, but I'm talking about the facts here. The facts are relevant. The facts are that this organization was not permitted to have a statement of faith, but the LGBT group was allowed to have a standing inclusive atmosphere for LGBT. In other words, they have to ascribe to the beliefs of that group, but the appellant was not allowed to have a requirement that its leaders adhere to the requirements of its groups. And the same with the DAC. It had to promote DAC goals. The SWAN is another of the groups. Is this an equal protection claim? It is a claim that there is differential treatment based on the statement of the beliefs. And what legal framework are you invoking in making this argument? I'm making this in the framework of the Religious Freedom Restoration Act. Which was in your second amended complaint, which the court did not allow to go forward. Yes, I understand. So it's not in the case? Well, it is in the case because one of the big issues of the case is, did the court abuse its discretion in denying leave to amend? In your motion for leave to amend, did you present any argument with respect to Rule 16B of the Federal Rules of Civil Procedure? Absolutely. It's not in there. Yes, it is in there. The issue is good cause. You don't cite Rule 16B anywhere. The substance of Rule 16 is cited. And that says you have to have good cause. If you look at the leading case to amend is the Minter case from the Tenth Circuit. The Minter case said this. It said that where an expert report is disclosed, which raises new defenses or facts, that that is good cause. And that's exactly what happened here. What happened here was that a defense was raised in the expert report by the defendants. But you raised that argument about the expert report for the first time in your reply brief. No, no, it was raised in my motion. And on appeal, did you raise it in your opening brief on appeal? Yes, yes. It is in my opening brief on appeal. You want me to give you the page and citation? Sure. The Minter case is cited at page 38 of my brief. But anyway, it's briefed very extensively there as well as in the reply brief. But what Minter said that if new facts and defenses are raised, that is good cause. And so what happened here was that the defendants gave an expert report stating that you could be a Christian and not ascribe to the statement of faith. Which was a surprise, because the statement of faith is the essential doctrines of Orthodox Christianity. So your clients say, but that doesn't make it so. I mean, what is novel about the notion that people have different views of what it means to be a Christian? Well, it's novel in that before this was filed, there was a statement of faith. There was no position taken by the defendants as to whether removing this statement of faith was a substantial burden. And they're claiming for the first time that it's not a substantial burden on religion to remove the central tenets of a statement of faith, not allow a group to have that. Well, at the time, you didn't even have a religious restoration claim in the matter when the expert was put forward, right? I mean, that's the whole subject of your second amended complaint. Yes, but how could someone claim to be a Christian and not accept the doctrines which make something essentially Christian? It's a surprise. Well, the notion that having a statement of faith is at issue and what the contents of that statement of faith would be, I just don't understand why that is a surprise. Because they asked you to make changes in what your governing documents were, right? They were the only group asked to make changes. But that goes to the question that the contents of your governing documents would have been an issue that you would have been aware of, right? Well, the contents are, but whether that was a substantial burden, they're saying it was not a substantial burden. No reasonable person could say it would not be a substantial burden to remove essentially the Christian statement of faith from a group that claims to be Christian. Let me just back up one second to sort of a basic fundamental issue here. I want to make sure I understand the issues that are at play as you understand it in this appeal. The one issue, and because Apo Lee defined what they saw you to be arguing, and as I understand it, there were three things. One, a denial of motion for Lee to file a second amended complaint, which we've been talking about. One. Two, the grant of a summary judgment to Apo Lee's on your Title VII claim, that was at issue. And the third one may not exist anymore because that was a grant of summary judgment to them on your constitutional claims, which as I understand it today, you're waiving that third argument. So the two arguments, do I understand correctly that the two arguments that are in play are the one related to the amendment to the second amended complaint, and two, your summary judgment, their summary judgment grant as it relates to Title VII? Yes, Your Honor. Okay. Your Honor, Lee was sought 13 days after this expert report was disclosed, 88 days before the discovery deadline. There was no prejudice. Well, didn't, at the time of the hearing on the motion to amend, counsel for Christians in the Workplace Networking Group told the district court, it's possible that a RFRA claim could have been filed right in the beginning. I will not dispute that. That's an accurate statement from the record. It is accurate, but that's not the standard for amendment. The standard is different. It's a good cause. There could be good cause, even if you could have filed it before. Well, there is a good cause if it's just that you overlook the claim. And the second amended complaint alleges no new facts. It just adds a cause of action, correct? Which supports our argument, because under Minter, if it's essentially the same facts, it's more likely they should grant leave. There's no case ever before the Tenth Circuit where, under these circumstances, they haven't granted leave to amend. Do you agree that you had all the facts you needed to bring a RFRA claim at the outset? No. No, I didn't, because we didn't know that they were going to disclose this expert report, stating that basically Christians could not be suffering a substantial burden if a statement of their faith was removed from their group. They're the only group treated this way. All that is is an opinion. That's not facts. I mean, if you knew all of the facts that you needed to bring a RFRA claim, and you acknowledged that you could have brought a RFRA claim, the fact that somebody has an opinion, an expert has an opinion about whether it would be a burden, what does that change? Well, how does that alter the calculus of the nucleus of facts that would have been before you to bring a claim? It changes in that they're stating new facts. What new facts are there? That's an opinion? No, they're stating that Christians could not ascribe to essential documents to Christianity. Those are new facts. How can it be Christian if you don't ascribe to the doctrines of Christianity? It doesn't make sense. Those are new facts. They weren't in the case before. And yet the Second Amendment amended complaint does not allege a single new fact as compared to the prior complaint. No, it doesn't. It just adds a RFRA claim based on the exact same facts. Same facts and also the disclosure of this report. But if you remember, there was such animosity to Christians in this organization that they said that with leaders present, one of the leaders of the group was told that he was disgusting. With leaders present, when they found out he was a Christian. They said, there's something about you that makes me sick to my stomach. Christian speakers were not permitted for this group, but speakers were permitted for other groups. They couldn't have scientific presentations that were, quote, too controversial. But every other group got to put on every presentation it wanted to. Other groups got funding. This group did not get funding. And this district treatment invokes what legal framework? What framework would support an action based upon that differential treatment? First of all, the Religious Freedom Restoration Act. You got a win on your amendment claim before the Religious Restoration is in this case. So it is not now. So absent that claim, what framework are you invoking with this talk of district treatment? In the Title VII claim. And as it relates to Title VII, how does that relate to a job requirement? Well, it's a job requirement because the law doesn't say it has to be a job requirement. It has to be a benefit of employment. And so this group was given different benefits of employment because they couldn't have these things that the other groups had. And it was only because of their religion. That's why. They couldn't fly their flag, but the LGBT flag was allowed to be flied. They couldn't be on their website. They had to remove things from their website. So they were treated very differently. And then, may I continue? You can continue your thought. My thought is that as far as undue hardship, to comply with what my clients wanted to do was to have their Statement of Faith and Disciplinary Clause, causes no hardship at all to the employer. Because they had this for years before the new diversity and inclusion program came in. And they used H.R. 008 to say that it was violating the law. But H.R. 008 is itself discriminatory because it does not incorporate federal law. Federal law already established stated that religious organizations have an exemption from Title VII and are allowed to elect their own leaders and choose their doctrine. So H.R. 008 itself is unconstitutional. There was no undue hardship to comply with this. They stated that the undue hardship was that they would get sued. But that was mere speculation. A lawsuit would have not been successful because of established law. And they were saying they would have to decide who could be leaders of the group. But clear law says that the religious organizations are allowed to make that decision. I know I'm slow, but I think you've moved on from one thought. Thank you, counsel. May it please the court, my name is Charles V. Hill. I am counsel for National Technology and Engineering Solutions of Sandia LLC, a wholly owned subsidiary of Honeywell, and Esther Hernandez, Erin Jim, and Bianca Hill. Are you a federal agency? No. How are you formed? What kind of artificial entity are you? Private corporation. So Honeywell itself, the parent, is a private entity. It's a LLC. I'm sorry, it's a company. It's incorporated. And then as part of Honeywell, Sandia, and if I can just use the word Sandia to make it... I don't want to do all that other stuff. Sandia is a subsidiary and it's an LLC. And it's a wholly owned? Yes. Since counsel has conceded the 1983 claims and argument on that particular motion, the grant of summary judgment, I won't address that. And if it pleases the court, I'll start with the motion to amend. Am I remembering reading it wrong? Was 16B argued at all in the motion for leave to amend? I don't think so. But I think that whether you look at 16B or 15A, the court did not abuse its discretion when it refused to grant the motion to amend. And, you know, the good cause is the standard, really, that the court has to look at. And as part of that, did the plaintiff know of the claims prior to the time that the amendment was made? And was there any evidence that deadlines could not be met? And when by deadlines, I mean the deadlines for amendments in the scheduling order. Here, the plaintiff did not meet the deadline in the scheduling order. And at the hearing on the motion to amend, as Judge McHugh pointed out, there was a statement by plaintiff's counsel that counsel and the plaintiff knew could have brought the RFRA claim and essentially did not do so. I think that was a key part of the district court's decision. And there's no evidence, therefore, that counsel and the plaintiff could not have met these deadlines, having known about this ahead of time. There was some argument about the expert disclosure as providing some sort of new evidence or some sort of basis that would change what the court did. It wasn't new evidence. It was simply a defense to the Title VII claim. And that's why it was raised. Then I'm going to go on to cover the Title VII claim. Why isn't the removal of endorsement from the plaintiff's organization here a denial of benefit for purposes of the prima facie Title VII case? Why shouldn't we be looking at it that way? Thank you, Your Honor. As I understand it, the standard for Title VII for that issue is whether an employee had a bona fide religious belief that conflicts with the work requirement and whether they suffered an adverse employment action for failure to comply with the work requirement. And so I guess my answer to that would be it's not a work requirement. It doesn't relate to the work of the employees. The employee resource groups at issue here, these are voluntary organizations. But they get funding from Sandia and that benefit was taken away from the employees who were members of that resource group. So employee resource groups, you're right in terms of what you get when you are a resource group is that you get to be on a website with your name listed. But they also get funding for speakers. There's some limited funding that can be available, yes, Your Honor. Okay, so if I were to think that that's a benefit to the employees, hasn't there been a loss of a benefit here due to the implementation of HR 008 or 0008? Well, if there is a loss of benefit that is cognizable under the law, I would argue to the court that we attempted to reasonably accommodate this organization and we briefed that up in terms of it wasn't the statement of faith in its entirety that was the problem. The problem was in the context of how this organization would appoint its leadership and how that leadership had to comply with a certain point of view or statement of faith. And that as an entity, we would be in a position of someone coming to us potentially. Counsel's right, it hadn't happened, but we would then be the arbiters of saying, hey, if you're going to be a recognized group, it's basically Sandia saying you're not religious enough one way or the other. So, I mean, your argument is really that it would be an undue hardship to accommodate. Yes. Because your accommodation to me doesn't seem like there was an offer of an accommodation. It was you've got to delete these requirements. I didn't see any accommodation there. I suppose the accommodation was you can continue as an ERG. You can say what you believe in. You just can't make that the sine qua non of leadership position. If you're going to be a recognized organization, C wings can still meet in our facilities, can still have, you know, go to a conference room, that type of thing. They're not. It's just that when you become a officially recognized employment resource group, that it really triggers that issue. Are you conceding or do you agree that the removal of ERG status is the denial of a benefit? So was there an adverse action here? No. I think it is, it is a, because it's not a work requirement, I guess, because it doesn't pertain to that. I'm sorry. It's a different element. Was it an adverse action? Was it an adverse action? I still don't think so, Your Honor. Could I just try to tease out something for my own benefit? This is a failure to accommodate claim. This is not a claim of district treatment, right? That is correct. And if it were a claim of district treatment, then the question of whether there was an adverse action related to other things would be at play, right? Yes. But as it relates to a failure to accommodate, as part of the prima facie case, at least looking at TUBORA, I guess it is, what we're talking about is a question of whether there was some conflict between religious belief and a job requirement. Yes. Let me ask you this. Did CWNG exhaust this claim, the Title VII claim, the administrative remedies? You're testing my memory. I don't think so. They didn't file something with the EEOC on behalf of the Christians in the Workplace Networking Group. I'm just going to use CWNG. There's no EEOC claim on their behalf, is there? There is not that I'm aware of. There's a claim on behalf of an individual. Is that sufficient? My interpretation of the law here is that would not be, because that individual was not a party to the case. I think CWNG's position on that is that it's somehow associational standing. They could sue based on any injury to any employee. But they didn't allege associational standing in the complaint, did they? They did not. So we're not looking at associational standing here, are we? We're not. That was litigated in front of the district court, though, right? Didn't the district court talk about standing? Yes, yes, he did. What about statutory standing? Can you be in the zone of interest protected by Title VII if you're not an employee? My view is that you cannot. I don't know that there's a Tenth Circuit case that specifically addresses, Judge McKee, your question on that issue, but I don't believe that you can. If it pleases the Court, that's all I have. If there's any further questions. No. Thank you. You used all your time, right? I don't believe so. All right, then case is submitted, and the Court will be in recess until 9 a.m. tomorrow. Let's sit down for a second. Come to the podium, counsel, and make your statement so I'm clear what you're talking about. Your Honor, Judge McHugh asked What do you want to do now? I want to answer the question from Judge McHugh about whether there can be standing for an entity that's in the zone of interest. Well, your time is up, and so unless Judge McHugh wants to hear you, we're not going to hear this now. I'd be willing to give him a minute. All right, then give him a minute. In the Allen v. Medrano case, U.S. Supreme Court case, it said that there a union could sue for civil rights violations on behalf of the members. The members didn't have to be a plaintiff. That is clear law. But it was an associational standing case, correct? At which this is also, okay? And also, the EEOC has its own enforcement guide in retaliation claims. It says it does not require employment for protection. And I cite that in my reply brief. So this was within the zone of interest because it was the group that was told they could not have certain things. So the group, therefore, has a claim. The group represents the interests of the people in the group. The group was treated different than any other of the employee groups. And the EEOC would not allow the group to file for a claim. They said it has to be done under individuals on behalf of the group, and that's what was done. Okay, and you're out of time. Thank you so much.